UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAMELA VAN BUREN

CIVIL ACTION

VERSUS

NUMBER 04-152-RET-SCR

STEPHANIE CAVE, MD, ET AL.

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from a attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 27, 2008.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAMELA VAN BUREN

VERSUS

STEPHANIE CAVE, MD, ET AL

CIVIL ACTION

NUMBER 04-152-RET-SCR

### MAGISTRATE JUDGE'S REPORT

Before the court is a Motion for Summary Judgment filed by defendants Stephanie Cave, M.D. and Sherry Blackwell. Record document number 54. The motion is opposed.[1]

### Background

Plaintiff Pamela Van Buren filed this action pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiff named as defendants Dr. Stephanie Cave and her unidentified insurer, Sherry Blackwell, Jeri Murphy, East Baton Rouge Parish District Attorney Doug Moreau, and the unidentified insurer of the District Attorney's office.[2]

In August 2001, the plaintiff received medical services from

---

[1] Record document number 56. Plaintiff filed a supplemental opposition memorandum. Record document number 61. Intervenor Dennis Whalen also filed an opposition memorandum. Record document number 66. Defendants filed a reply memorandum. Record document number 70. Intervenor also filed a reply memorandum. Record document number 78.

[2] The insurer defendants have not been identified.

defendant Dr. Cave.  Plaintiff issued a $2,832.00 check to Dr. Cave's office to pay the balance of her bill.  Plaintiff allegedly requested that the check be held until there were sufficient funds in her checking account to cover the check.  Plaintiff alleged that although Dr. Cave's office agreed to this arrangement, the check was deposited approximately one week later.  The check was returned unpaid, subsequently re-deposited, and again returned unpaid.  In November 2001 the plaintiff issued another check to Dr. Cave's office, with the same arrangement that the check would not be deposited until the plaintiff had sufficient funds in her account to cover the check.  This check was subsequently deposited in September 2002 without the approval of the plaintiff.  The check was returned unpaid.

    Dr. Cave's employee, defendant Sherry Blackwell, reported the returned checks to the East Baton Rouge Parish District Attorney's office.  Blackwell brought the checks to the District Attorney's office and completed a Merchant Allegation of Worthless Check.  In February 2003 Blackwell returned to the District Attorney's office where she completed a new form because the first one was incorrect.  At that time, Blackwell also signed an "affidavit" prepared by the District Attorney's office which was notarized by defendant Murphy.[3]  Based on the affidavit, the District Attorney's office

---

[3] The term "affidavit" is used in this report for convenience. As will be explained in the Analysis section of this report, there
(continued...)

procured an arrest warrant.  Plaintiff was arrested and prosecuted under LSA-R.S. 14:71 for issuing worthless checks.[4]  A state court judge found no probable cause to support the charges. Plaintiff was subsequently acquitted of all charges.

Defendants Dr. Cave and Blackwell (hereafter the "moving defendants") filed this motion and argued that they could not be held liable under § 1983 because the plaintiff cannot establish that they acted under color of state law.  Defendants argued that because they are private individuals, the plaintiff would need to show that they conspired with a state actor in order to prevail on a § 1983 claim against them.  The moving defendants asserted that their involvement with the District Attorney's office was limited to the presentation of the check, completing a form, and signing the affidavit.  They also asserted that there is no evidence they had any agreement to extort the plaintiff for purposes of

---

[3](...continued)
is no genuine dispute that the statement given by Blackwell to the District Attorney's office was not a proper affidavit under Louisiana law.  See also, plaintiff's supplemental opposition memorandum, record document number 61.

[4] Under La. R.S. 14:71, to obtain a conviction for issuing of a worthless check the state is required to prove beyond a reasonable doubt that: (1) defendant issued, in exchange for anything of value, whether the exchange is contemporaneous or not; (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which drawn has insufficient funds with the financial institution on which the check is drawn to have the instrument paid in full on presentation; and (4) the instrument was issued with intent to defraud.

3

collecting on a civil debt.  In support of their motion, the moving defendants relied on deposition testimony from Dr. Cave, Blackwell, and Murphy.[5]

Plaintiff argued that in order to establish the moving defendants' liability under § 1983, she is not required to prove a conspiracy between the defendants and the District Attorney's office.  Plaintiff argued that a review of the facts shows the defendants acted under the color of state law under the symbiotic relationship test or the close nexus test.

## **Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of

---

[5] Record document number 54, moving defendants exhibits A, B, and C, respectively.

evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence or resolve factual disputes. *Id.; International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). To state a claim under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).[6] A plaintiff must also identify defendants who were personally involved or whose acts are causally connected to the alleged Constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005), *citing*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

---

[6] In a § 1983 action brought against a state official, the statutory requirement of action under color of state law and the state action requirement of the Fourteenth Amendment are identical. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2749-50 (1982).

5

A non-state actor may be held liable under § 1983 when the conduct challenged as the basis of the constitutional deprivation constitutes a state action under color of law. *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). In determining whether a private actor is acting under color of law, the critical inquiry for the court is whether "the alleged infringement of federal rights [can be] fairly attributable to the State." *Cornish v. Correctional Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005); *quoting*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764 (1982). "The fair attribution test has two parts: 'First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.'" *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999), *citing*, *Lugar*, 457 U.S. at 938-39, 102 S.Ct. at 2753-54.

The Fifth Circuit has recognized several different tests to determine whether a private individual may be considered a state actor. *See*, *Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003); *see also, Lugar*, 457 U.S. at 938-39,

6

102 S.Ct. at 2753-54.  The most common tests include: (1) the "public function" test, which examines whether the private entity performs a function which is exclusively reserved to the state; (2) the "nexus" test, which examines whether the state has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise;[7] (3) the "state compulsion" (or coercion) test, which holds the state responsible for a private actor's decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State; and (4) the "symbiotic relationship" test, which considers whether the state and the private entity are physically and financially integrated.  *Richard*, 355 F.3d at 352; *Beanal v. Freeport-McMoRan, Inc.*, 969 F.Supp. 362, 378 (E.D. La. 1997); *see, e.g., Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856 (1961); *Fulton v. Hecht*, 545 F.2d 540, 541-43 (5th Cir. 1977); *Rendell-Baker v. Kohn*, 457 U.S. at 841-43, 102 S.Ct. at 2771-72.  The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry...."  *Cornish*, 402 F.3d at 550,

---

[7] The "nexus" test has also been referred to as the "state action" or "joint action" test.  *See, Bass,* 180 F.3d at 242; *Cornish*, 402 F.3d at 550 (under the joint action test private actors will be considered state actors where they are "willful participant[s] in joint action with the State or its agents").

*citing Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754-55.

## **Analysis**

A review of the record shows that the moving defendants have failed to establish that no genuine issue of material fact exists with respect to whether they can be held liable as state actors under § 1983.

The moving defendants relied on the testimony of defendants Blackwell and Murphy to establish that they did not have an agreement or conspire with the District Attorney's office to extort the plaintiff for purposes of collecting a civil debt.[8]  Murphy testified that she had no recollection of Blackwell or her affidavit and had no personal stake in the process of arresting and/or prosecuting the plaintiff for issuing worthless checks.[9] Blackwell testified that she had no experience with the District Attorney's office regarding unpaid checks and was only made aware of the process by outside legal advice.[10]  The moving defendants

---

[8] Plaintiff's § 1983 claims are based on a deprivation of liberty under the Fourth Amendment, rather than a property right under the Fourteenth Amendment.  Thus, the moving defendants' focus on an act of extortion or debt collection is misplaced.  The appropriate inquiry is whether the plaintiff's alleged false imprisonment resulted from a joint action between the moving defendants and the State.

[9] Moving defendants exhibit C, Murphy deposition, pp. 5-16 and 57-60.

[10] Moving defendants exhibit B, Blackwell deposition, pp. 33, 37-38.

argued that there is no evidence to support finding that Blackwell concocted a scheme with Murphy to falsify an affidavit.  Defendants cited *Rowe v. City of Fort Lauderdale*[11] and argued that they did not reach an understanding with the State to violate the plaintiff's rights.

A private individual may be found to be a state actor when involved in a conspiracy or participating in joint activity with state actors.[12]  The undisputed evidence establishes that the moving defendants did not "conspire" with the District Attorney's office to violate the plaintiff's constitutional rights.  While the moving defendants have demonstrated that a conspiracy-based claim under § 1983 would be unsuccessful, this finding is not the end of the court's inquiry.[13]  The record must also demonstrate that the moving defendants were not participating in a joint activity with the District Attorney's office.

Plaintiff asserted that the moving defendants can be held as state actors under either the symbiotic relationship test or the nexus test.  To support this argument, the plaintiff relied on the

---

[11] 279 F.3d 1271 (11th Cir. 2002).

[12] *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), *citing*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52, 90 S.Ct. 1598, (1970).

[13] *See*, *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (holding that a conspiracy claim under § 1983 requires an agreement between private and public defendants to commit an illegal act and an actual deprivation of constitutional rights).

9

following facts: 1) the District Attorney's office established the procedure for prosecuting worthless checks charges; 2) the complaining victim is required to comply with the procedure; 3) the District Attorney's office publishes and distributes pamphlets to local businesses informing them of this worthless check charge procedure and inviting them to participate in this service, and 4) the worthless check charge procedure generates revenue for the District Attorney's office.[14]

The record is devoid of facts showing a physical relationship between the moving defendants and the District Attorney's office. However, under state law both defendant Dr. Cave and the District Attorney's office could benefit financially from the plaintiff's conviction for violation R.S. 14:71. Under LSA-R.S. 14:71(G) a conviction requires the court to impose "as part of the sentence restitution in the amount of the check or checks" plus a $15 dollar per check service charge. Payment of restitution would directly benefit Dr. Cave. Under LSA-R.S. 16:15(A)(5), the District Attorney's office could collect a fee of 20 percent of the amount recovered when the check was issued in violation of R.S. 14:71.[15] Payment of this fee would directly benefit the District Attorney's office. Therefore, a reasonable jury could find from the summary

---

[14] Plaintiff's opposition memorandum, pp. 8-9.

[15] Intervenor calculated that the fee would have been more than $1000 if the plaintiff had been convicted. Record document number 66, intervenor's opposition memorandum, p. 6.

judgment evidence that there is a financial interdependence between defendant Dr. Cave and the District Attorney's office sufficient to satisfy the symbiotic relationship test.

Additionally, the evidence does not eliminate the reasonable possibility of finding a nexus between the actions of the moving defendants and the District Attorney's office, such that the moving defendants' actions may be fairly treated as state action. While there is no controlling case law addressing the specific situation presented in this case, the Supreme Court's decision in *Lugar* addressed analogous facts and provides substantial guidance.

In *Lugar*, a creditor allegedly failed to meet the statutory requirements for enforcing an attachment of the debtor's property, yet state officials seized the property without allowing the debtor to defend the action. The creditor sought a pre-judgment attachment and alleged in an *ex parte* petition that the debtor was disposing of or might dispose of his property in order to defeat his creditors. Acting upon that petition, a clerk of the state court issued a writ of attachment, which was executed by the county sheriff. A hearing on the propriety of the attachment was conducted 34 days after the levy, and the trial judge dismissed the attachment because the respondent failed to establish the alleged statutory grounds for the attachment.[16]

The debtor subsequently filed a § 1983 action in federal court

---

[16] 457 U.S. at 924-25, 102 S. Ct at 2747.

and alleged that in attaching his property, the creditor acted jointly with the State to deprive him of his property without due process. The Supreme Court held that while private misuse of a statutory attachment procedure does not describe conduct that can be attributed to the State, use by a private individual of a constitutionally challenged state statutory scheme is sufficient to satisfy the state action element in stating a cause of action under § 1983.[17] Thus, the debtor's allegations which challenged the statutory attachment procedure as being procedurally defective under the Due Process Clause, did present a valid § 1983 action against the creditor.

A substantial number of the allegations and much of factual evidence provided by the plaintiff focuses on the moving defendants' abuse or misuse of the worthless check procedure. Plaintiff asserted that: (1) the moving defendants' failure to disclose relevant information to the District Attorney's office resulted in a false affidavit; (2) Murphy was not a notary public or an *ex officio* notary public authorized to place Blackwell under oath; and (3) Blackwell was not placed under oath and did not sign the affidavit before Murphy.[18] Insofar as the plaintiff's § 1983 claim is premised solely on these allegation and evidence of misuse of the District Attorney's worthless check charge procedure, *Lugar*

---

[17] *Id.* at 941, 102 S.Ct. at 2756.

[18] Record document number 61, plaintiff's supplemental opposition memorandum, pp. 2-3 and exhibits A - F.

supports finding that the moving defendants were not state actors.

However, a review of the plaintiff's complaint also shows that she has, in part, challenged the constitutionality of the District Attorney's procedure for prosecuting worthless check charges. Plaintiff alleged that:

> Defendant Moreau, acting in his official capacity as District Attorney, took no affirmative steps to implement a procedure in the District Attorney's Office to inquire in the status of any check, but particularly aged checks that could easily represent a forbearance on the part of a merchant or businessperson to delay collection on a check such as would effectively take the entire process out of the realm of 'issuing a worthless check.'[19]

Plaintiff further alleged that her arrest and incarceration were the result of a custom and policy of the District Attorney's office coupled with the intentional actions of the moving defendants.[20] These allegations can fairly be understood to claim that the District Attorney's worthless check charge procedure is a constitutionally deficient policy or custom which caused the plaintiff to be arrested without probable cause.

The moving defendants presented no evidence or arguments addressing whether the District Attorney's office implemented an unconstitutional procedure for prosecuting worthless check charges. Therefore, a genuine issue of material fact still exists with respect to the moving defendants' liability under § 1983 as private actors who invoked an allegedly unconstitutional state-created

---

[19] Record document number 52, Amended Complaint, ¶ 53.

[20] *Id.* at ¶ 54.

13

procedure.

This determination is further supported by the Fifth Circuit case of *Smith v. Brookshire Brothers, Inc*.[21] and its progeny. In *Brookshire*, the plaintiff brought a § 1983 claim against a merchant who reported a suspicion of shoplifting to the police, and the police then detained, fingerprinted, and booked the plaintiff.[22] The Fifth Circuit held that the private merchant could be subject to liability under the nexus test if the plaintiff could show that the store and the police were acting in concert and that they had a pre-conceived plan which resulted in the detention.[23] The Fifth Circuit refined the *Brookshire* holding in subsequent cases, stating:

> ... a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer.[24]

Evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of

---

[21] 519 F.2d 93 (5th Cir. 1975)

[22] *Brookshire*, 519 F.2d at 94.

[23] *Id.*

[24] *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 749 (5th Cir. 2001), *citing*, *Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989); *Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982).

a suspect, and the officer writing his own report.[25]

Blackwell testified that she presented the checks to the District Attorney's office, completed a report, and executed an affidavit prepared by the District Attorney's office.[26] Murphy testified that under the worthless check charge procedure, an affidavit is prepared based on the information provided by the merchant in the Merchant Allegation of Worthless Check, and that affidavit forms the basis for issuing an arrest warrant.[27] There is nothing in the record which indicates that anyone in the District Attorney's office interviewed either of the moving defendants or the plaintiff, wrote an independent report, or performed any investigative action which could support finding that an independent investigation occurred. The affidavit and warrant also fail to show that any independent information was obtained and/or reviewed by the District Attorney's office. A reasonable jury could find that the moving defendants knew or should have known that when defendant Blackwell signed the affidavit it was for the purpose of causing the plaintiff to be arrested. A reasonable jury could also find that District Attorney's office routinely relied on improperly executed affidavits (such as the one involved in this case), without any independent verification or

---

[25] *Morris*, 277 F.3d at 750.

[26] Record document number 56, exhibits K and N, Blackwell deposition, pp. 64 and 37, respectively.

[27] Record document number 54, Murphy deposition, p. 59.

investigation, to obtain arrest warrants. And the reasonable jury could further find that the actions of the moving defendants combined with the District Attorney's worthless check charge procedure resulted in the plaintiff being arrested without probable cause based solely Blackwell's statement. Thus, under the reasoning of *Brookshire* and its progeny, a genuine issue of material fact exists with respect to the moving defendants' liability under § 1983.

The facts in *Lugar*, *Brookshire*, and *Morris* do not exactly track the facts in this case. However, their analyses of the legal issues is instructive, and when applied to the summary judgment evidence presented in this case, the show that a genuine issue of material fact still exists as to whether the moving defendants' actions can fairly be considered as state action.[28] Consequently, the moving defendants are not entitled to summary judgment.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendants Stephanie Cave, M.D. and Sherry Blackwell be denied.

Baton Rouge, Louisiana, August 27, 2008.

*[signature: Stephen C. Riedlinger]*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[28] Based on this conclusion, it is unnecessary to address the plaintiff's arguments regarding the "state compulsion/coercion" test.