UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAMELA VAN BUREN

CIVIL ACTION

VERSUS

NUMBER 04-152-RET-SCR

STEPHANIE CAVE, MD, ET AL.

**<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from a attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, September 9, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAMELA VAN BUREN

VERSUS

STEPHANIE CAVE, MD, ET AL

CIVIL ACTION

NUMBER 04-152-RET-SCR

### MAGISTRATE JUDGE'S REPORT

Before the court is a Motion for Summary Judgment filed by defendants East Baton Rouge Parish District Attorney Doug Moreau and Jeri Murphy. Record document number 72. The motion is opposed.[1]

### Background

Plaintiff Pamela Van Buren filed this action pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments. Plaintiff named as defendants Dr. Stephanie Cave, her employee Sherry Blackwell, East Baton Rouge Parish District Attorney Doug Moreau in his official capacity, Jeri Murphy, an employee in the District Attorney's office, in her individual and official capacities, and the unidentified insurers of Dr. Cave and the District Attorney's office.[2]

---

[1] Record document number 73. Intervenor Dennis Whalen also filed an opposition memorandum. Record document number 74.

[2] The insurer defendants have not been identified.

In August 2001, the plaintiff received medical services from defendant Dr. Cave. Plaintiff issued a $2,832.00 check to Dr. Cave's office to pay the balance of her bill. Plaintiff allegedly requested that the check be held until there were sufficient funds in her checking account to cover the check. Plaintiff alleged that although Dr. Cave's office agreed to this arrangement, the check was deposited approximately one week later without the approval of the plaintiff. The check was returned unpaid, subsequently re-deposited, again without the approval of the plaintiff, and again returned unpaid. In November 2001 the plaintiff issued another check to Dr. Cave's office, with the same arrangement that the check would not be deposited until the plaintiff had sufficient funds in her account to cover the check. This check was subsequently deposited ten months later in September 2002 without the approval of the plaintiff and was returned unpaid.

Dr. Cave's employee, defendant Sherry Blackwell, reported the returned checks to the East Baton Rouge Parish District Attorney's office. Blackwell brought the checks to the District Attorney's office and completed a Merchant Allegation of Worthless Check. In February 2003 Blackwell returned to the District Attorney's office where she completed a new form because the first one was incorrect. At that time, Blackwell also signed an "affidavit" prepared by the District Attorney's office which was notarized by defendant

2

Murphy.[3]  Based on the affidavit, the District Attorney's office procured an arrest warrant.  Plaintiff was arrested and prosecuted under LSA-R.S. 14:71 for issuing worthless checks.[4]  A state court judge found no probable cause to support the charges. Plaintiff was subsequently acquitted of all charges.

Defendants Moreau and Murphy (hereafter the "moving defendants") filed this motion arguing that (1) they could not be held liable under § 1983 and state law because the plaintiff cannot establish that the claimed notarial defects proximately caused her arrest, and (2) neither Moreau nor Murphy had a duty to verify Blackwell's allegations in the warrant application.  In support of their motion, the moving defendants relied on a statement of facts

---

[3] The term "affidavit" is used in this report for convenience when referring to Blackwell's statement.  As will be explained in the Analysis section of this report, there is no genuine dispute that the statement given by Blackwell to the District Attorney's office was not a proper affidavit under Louisiana law.  *See also*, plaintiff's opposition memorandum, record document number 73, pp. 7-8; intervenor's opposition memorandum, record document number 74, pp. 2, 8-10.

[4] Under La. R.S. 14:71, to obtain a conviction for issuing of a worthless check the state is required to prove beyond a reasonable doubt that: (1) defendant issued, in exchange for anything of value, whether the exchange is contemporaneous or not; (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which drawn has insufficient funds with the financial institution on which the check is drawn to have the instrument paid in full on presentation; and (4) the instrument was issued with intent to defraud.

not in dispute,[5] Moreau's March 1, 1993 memorandum appointing Murphy as an ex officio notary public,[6] portions of Murphy's deposition testimony,[7] the Merchant Allegation of Worthless Check,[8] and the arrest warrant, which includes Blackwell's affidavit.[9]

Plaintiff and intervenor opposed the motion arguing that there was no probable cause to arrest the plaintiff, Murphy was not a bona fide notary public and therefore Blackwell's affidavit was insufficient to support the arrest warrant, Murphy's act of notarizing the affidavit was the cause of the plaintiff's arrest, Moreau did not have reasonable procedures in place to adequately safeguard against the issuance of worthless check charge warrants

---

[5] Record document number 72, attachment.

[6] *Id.*, exhibit 1.

[7] *Id.*, exhibit 2.

[8] *Id.*, exhibit 3.

[9] *Id.*, exhibit 4. The moving defendants offered a letter dated January 6, 2003 addressed to the plaintiff. This letter is found in the record behind the arrest warrant, exhibit 4. However, the letter is not mentioned in Blackwell's affidavit or the arrest warrant itself. According to the moving defendants supporting memorandum, this letter was sent to give the plaintiff a chance to avoid prosecution by paying the check, paying a fee to the District Attorney, and paying Dr. Cave's bank service charge . *Id.*, supporting memorandum, p. 2. This letter is not signed. The moving defendants did not provide any affidavit or other evidence establishing that it was received by the plaintiff or even mailed to her. Moreover, the moving defendants did not explain how it supports their arguments or even that it was intended to do so. Rather, it appears that the letter is offered only to provide background information about the District Attorney's worthless check charge procedure as described by Murphy in her deposition.

4

not supported by probable cause, and qualified immunity is not available to Murphy.  Plaintiff and intervenor supported their oppositions with portions of Blackwell's deposition testimony,[10] copies of the two checks and the arrest warrant,[11] the plaintiff's affidavit,[12] portions of Blackwell's deposition testimony,[13] Moreau's answer to the plaintiff's Interrogatory No. 1,[14] and the intervenor's response to the moving defendants' statement of facts not in dispute.[15]

This report will address only the arguments made by the moving defendants in their motion.  It is unnecessary to address arguments made by the plaintiff and the intervenor which do not respond to the grounds for dismissal argued by the moving defendants.

Although the moving defendants sought dismissal of all the plaintiff's claims against them, they did not specifically address the plaintiff's state law claims brought under Louisiana Civil Code article 2315 for false arrest, malicious prosecution and intentional infliction of emotional distress.  Consequently, this

---

[10]  Record document number 73, plaintiff's opposition memorandum, exhibits A and B.

[11]  *Id.*, exhibit C.

[12]  *Id.*, exhibit D.

[13]  *Id.*, exhibits E, F, G, I and J.

[14]  *Id.*, exhibit H.

[15]  Record document number 75, attachment.

report does not specifically address those claims either. The moving defendants did argue that they had no duty to verify the arrest warrant allegations, which presumably relates to the plaintiff's state law false arrest claim since they cited only state law cases which address the duties of a notary. This argument is addressed in part B of the Analysis below.

### **Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106

S.Ct. at 2513. The court may not make credibility findings, weigh the evidence or resolve factual disputes. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). To state a claim under § 1983 a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).[16] A plaintiff must also identify defendants who were personally involved or whose acts are causally connected to the alleged Constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005), *citing*, *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

The Fourth Amendment to the U.S. Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

---

[16] In a § 1983 action brought against a state official, the statutory requirement of action under color of state law and the state action requirement of the Fourteenth Amendment are identical. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2749-50 (1982).

7

describing the place to be searched, and the persons or things to be seized.

Article 1, § 5 of the Louisiana Constitution of 1974 reads as follows:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

It is well established that false arrest and malicious prosecution are causes of action cognizable under § 1983. *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992).[17] "These causes of action implicate the constitutional 'guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause.'" *Sanders*, *supra*, citing *Thomas v. Kippermann*, 846 F.2d 1090 (5th Cir. 1988). To recover on a § 1983 claim for false arrest or malicious prosecution, the plaintiff must tender evidence establishing misconduct that exceeds mere negligence. *Sanders*, supra.

Relying on *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S.Ct 2606

---

[17] *See*, *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)(clarifying nature of malicious prosecution claims under § 1983).

(1993), the Fifth Circuit Court of Appeals determined that the plaintiff's allegations, when taken as true, amount to an allegation that Murphy fabricated false evidence during the preliminary investigation of a crime.  "We conclude that Murphy can be said to have fabricated false evidence under the facts pleaded by Van Buren and that she was acting as an investigator when she did."  Record document number 28, *Van Buren v. Cave*, No. 06-30469 (5th Cir. 2007)(unpublished opinion), p. 5.[18]  Again accepting the plaintiff's allegations as true, the Fifth Circuit stated:

> Taking these allegations as true, as we must, it can be said that Murphy prepared and notarized a false affidavit with knowledge of the document's falsity during the process of initiating judicial proceedings against Van Buren.  This conduct is tantamount to fabricating false evidence. ... In *Buckley* the Court held that the prosecutor had not had probable cause to arrest the defendant at the time he allegedly fabricated false evidence where the alleged fabrication occurred well before a special grand jury was empaneled to investigate the case, which in turn occurred months before the defendant was finally arrested.  Here, although the timeline is much shorter, probable cause clearly did not exist before Blackwell approached Murphy to begin the process of initiating proceedings against Van Buren.  Accordingly, Murphy was acting as an investigator, not an advocate, when she prepared and notarized Blackwell's affidavit, ..."

*Id.* at 6 (internal citations omitted).[19]

---

[18] *Van Buren v. Cave*, 236 Fed.Appx. 894 (5th Cir. 2007).

[19] Use of the term "investigator" does not constitute a finding that Murphy was a properly qualified investigator under Louisiana law, LSA-R.S. 16:13.1 and R.S. 40:2402.  Rather the term "investigator" is used to distinguish the role of the person as being different from the role of prosecutor.  The Fifth Circuit
(continued...)

9

For a § 1983 claim, it is well established that an official capacity claim against a state official is the same as a claim against the local government entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105 (1985). In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978), the Supreme Court made clear that local government liability under § 1983 is established only when the "execution of a government's policy or custom, whether made by its law makers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury." *Id.* at 690, 98 S.Ct. at 2035.

## Analysis

A review of the record shows that the moving defendants have failed to establish that no genuine issue of material fact exists with respect to whether they can be held liable under § 1983 and state law.

**A. Moving defendants' first ground for summary judgment: The claimed notarial defects did not proximately cause the arrest.**

The summary judgment evidence readily supports the plaintiff's

---

[19](...continued)
concluded based on the plaintiff's allegations that Murphy was not acting as a prosecutor when she notarized Blackwell's affidavit. The summary judgment evidence confirms this conclusion. Indeed, from the summary judgment evidence a reasonable jury could find that Murphy was not even acting in the role of a bona fide investigator under Louisiana law, but rather was performing (albeit it improperly) a routine administrative task.

allegations regarding the actions taken by both Blackwell and Murphy which led to issuance of the arrest warrant. The fundamental error in the moving defendants' motion is that it is premised on speculation about would have happened if Murphy had actually been properly appointed by Moreau as an ex officio notary for his office, had actually posted the bond required under state law, had actually placed Blackwell under oath, and had actually witnessed Blackwell sign the affidavit upon which the plaintiff's arrest was based.[20] The moving defendants' no-proximate-cause argument[21] is unpersuasive.

There is no genuine dispute that Murphy did not actually administer an oath to Blackwell and did not witness Blackwell sign the affidavit. As the plaintiff and the intervenor explained, the result was an arrest not supported by oath or affirmation as required by both the Fourth Amendment and Article 1, § 5 of the Louisiana Constitution. Rather, it was an arrest supported by a simple written statement containing clearly false information, and not a genuine affidavit as required by the Louisiana Code of

---

[20] The moving defendants asserted that Moreau appointed Murphy as an ex officio notary on March 1, 1993. Record document number 72, Statement of Facts Not in Dispute, number 1. While Moreau did issue a memorandum that date appointing Murphy as an ex officio notary for his office, the moving defendants have not presented any evidence that she posted the bond required under LSA-R.S. 35:398.

[21] Plaintiff referred to this argument as the "no harm, no foul" argument. Record document number 73, p.1.

11

Criminal Procedure article 202. Murphy's signature on the affidavit misrepresented to the state court judge compliance with the Fourth Amendment, the Louisiana Constitution, and the provision of the Louisiana Code of Criminal Procedure necessary for a valid arrest warrant to be issued. A reasonable jury could find from the summary judgment evidence that by notarizing Blackwell's affidavit Murphy caused the issuance of the warrant to arrest the plaintiff.[22]

The undisputed evidence shows that the check which was presented to Murphy was not returned "ACCOUNT CLOSED" as was represented in Blackwell's affidavit.  It was returned "NSF", i.e., Not Sufficient Funds.  In a footnote the moving defendants asserted that the plaintiff has not explained how this error in Blackwell's affidavit caused her injury.[23]  The obvious answer is that had the affidavit accurately described the returned check as NSF it would not have constituted false evidence (assuming all of the other statements in the affidavit were truthful).

In the same footnote, the moving defendants assert that Murphy is not responsible for that error or any other mistakes in the

---

[22] The moving defendants made no argument that the arrest warrant would have still been issued based only on Blackwell's statement without it having been notarized by Murphy.  Nor did the moving defendants argue that had the state court judge known Murphy did not actually place Blackwell under oath and witness Blackwell sign the affidavit, he would still have issued the warrant.

[23] Record document number 72, supporting memorandum, p. 5, n. 18.

affidavit. The summary judgment evidence does support the assertion that Murphy did not prepare the affidavit Blackwell signed and therefore, in that sense, Murphy "is not responsible for any mistakes in it." Although Murphy was not responsible for preparing the affidavit, a reasonable jury could find that she is responsible for the mistakes in it being transmitted to the state court judge who relied on them when he issued the arrest warrant. There is nothing in the summary judgment record which indicates the plaintiff would have been arrested but for Murphy doing so.

Finally, again in the same footnote, the moving defendants assert that "such negligence" does not rise to the level of a constitutional tort. Assuming the moving defendants are referring to negligence in preparing Blackwell's affidavit, their argument does not address Murphy's conduct since there is no genuine dispute that Murphy did not prepare the affidavit. The moving defendants did not argue that Murphy negligently forwarded the completed warrant application to the state court judge.[24]

**B.   Moving defendants' second ground for summary judgment: Moreau has no duty to verify arrest warrant allegations.**

In this part of their motion the moving defendants asked, "But what about the *official capacity* claims against Murphy and Moreau?"

---

[24] It is not clear from the summary judgment record exactly how the completed arrest warrant application is transmitted from the District Attorney's office to the state court judge, and whether that is done by Murphy herself or by someone under her supervision. It is reasonable to infer from the summary judgement evidence that she is an indispensable part of the process.

13

In support of summary judgment on the plaintiff's official capacity claims the moving defendants make a single argument: neither of them had any duty to review the sufficiency of the warrant application's allegations before notarizing it.[25]  They argued:

> ... neither Murphy nor anyone in the district attorney's office had a duty to double-check the veracity of the warrant application's allegations.  The office's only duty was to verify Blackwell's signature.  Since Blackwell actually signed the application, no additional measures would have made a difference.[26]

A reasonable jury could find from the summary judgment evidence, particularly the deposition testimony of Murphy and Blackwell, that it was an official policy and a routine practice in District Attorney Moreau's worthless check charge procedure: (1) to use unsworn statements later notarized by Murphy outside the presence of the affiant; (2) to not make any independent investigation of the facts alleged in the affidavit by anyone in his office, (3) to present such affidavits to a state court judge for the purpose, and with the expectation, of obtaining an arrest warrant and causing the subsequent arrest of the person named in

---

[25] Record document number 72, supporting memorandum, p. 8.

[26] *Id.*  It is unclear whether this argument was made to defeat both the plaintiff's § 1983 claims and her state law claims since the moving defendants cited only two state court cases, which address the duties of notaries, to support it.  It will be construed as being offered to defeat both claims.
   Again in a footnote, the moving defendants alluded to possible discretionary immunity under state law, LSA-R.S. 9:2798.1.  However, then they stated "there is no need to reach this defense." *Id.* at 9, n. 32.  Accordingly, this report does not address it.


the warrant on a worthless check charge.  A jury could reasonably further find that the actions of the moving defendants, combined with those of defendants Dr. Cave and Blackwell, resulted in the plaintiff being arrested without probable cause.[27]

Insofar as the moving defendants attempted in their motion to make a duty-risk analysis of the plaintiff's state law claims, their effort also fails.  First, the moving defendants do not explain how a duty-risk analysis applies to the state law claims against them in their official capacity.  Second, even accepting for the purpose of this motion that Murphy's only duty was to verify Blackwell's signature by witnessing her sign the affidavit, clearly Murphy did not even do that.

Neither of the two state court cases relied upon by the moving defendants supports their motion since it is undisputed that Murphy was not a notary public, and a reasonable jury could find that she was not a properly appointed ex officio notary public either.

---

[27] The moving defendants diminish the role an oath plays in obtaining an arrest warrant.  They argued: "If Blackwell had signed the application in Murphy's presence, and Murphy had notarized it then and there, the same arrest warrant would have issued."  Record document number 72, supporting memorandum, p. 7.  This argument assumes that Blackwell would still have signed the affidavit even after actually taking an oath to tell the truth.  The intervenor's response to this argument is worth noting: "The notary elevates the inconsequential lie to the felony of perjury, therefore it is hoped the declarant will be truthful."  The Fourth Amendment requirement of "probable cause supported by Oath or affirmation," which is also required under the Louisiana Constitution, is not an archaic burden to be routinely discarded in favor of administrative efficiency or personal convenience.

15

Consequently, when she signed the affidavit she was acting only in the capacity of an employee of District Attorney Moreau, holding the job of supervisor of the worthless check section. Arguably then, her duty was the duty to not knowingly present false evidence in an affidavit offered to support an arrest warrant. A jury could reasonably find from the undisputed summary judgment evidence that Murphy failed to perform not only her duty as so narrowly circumscribed by the moving defendants, but also the broader duty to not present false evidence.

As to Moreau's liability under state law, the jury could reasonably find him vicariously liable as Murphy's employer since she was undoubtedly acting within the course and scope of her official duties as his employee.

Consequently, the moving defendants are not entitled to summary judgment.

### Conclusion

Considering all the undisputed summary judgment evidence, and all the disputed evidence in the light most favorable to the plaintiff, a reasonable jury could return verdict against both moving defendants. Summary judgment for neither of them is warranted.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendants East Baton Rouge

Parish District Attorney Doug Moreau and Jeri Murphy be denied.

Baton Rouge, Louisiana, September 9, 2008.

　　　　　　　　　　　　　　　　　　　*Stephen C. Riedlinger*
　　　　　　　　　　　　　　　　　STEPHEN C. RIEDLINGER
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

17